IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SARAH HEINZL, individually and on behalf of   )
all others similarly situated,   )
                Plaintiff,   )
  )
     vs   )     Civil Action No. 14-1316
  )     Magistrate Judge Mitchell
STARBUCKS CORPORATION,   )
                Defendant.   )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sarah Heinzl, brings this action individually and on behalf of all others similarly situated against Defendant, Starbucks Corporation ("Starbucks"), alleging violations of Title III of the Americans With Disabilities Act, 42 U.S.C. §§ 12181 to 12189 (ADA). Specifically, she alleges that the facilities at Starbucks are not fully accessible to and independently usable by individuals who use wheelchairs for mobility, as she does, because of various barriers in the parking lots and along the routes to the building entrances.

Presently before the Court is Defendant's motion to dismiss the Complaint. Defendant challenges Plaintiff's standing to bring this action, at least with respect to Starbucks locations she has not visited, and contends that she has sued the incorrect party, and/or that she has failed to join necessary and indispensable parties because Starbucks does not own, occupy or control the "place of public accommodation" at issue, i.e., the parking lots in question, but is only a tenant. For the reasons that follow, the motion will be denied.

Facts

Plaintiff states that she is a resident of the Brookline neighborhood in the South Hills area of Pittsburgh in the Commonwealth of Pennsylvania who has a mobility disability and is limited in the major life activity of walking, causing her to be dependent upon a wheelchair for mobility.

(Compl. ¶¶ 2, 15, 26.)[1]  She has visited Defendant's property located at 1050 Park Manor Boulevard in Pittsburgh, Pennsylvania ("Subject Property 1"), Defendant's property located at 971 Greentree Road in Pittsburgh, Pennsylvania ("Subject Property 2"), and Defendant's property located at 3145 Bankesville Road in Pittsburgh, Pennsylvania ("Subject Property 3"). During these visits, she has experienced unnecessary difficulty and risk due to excessive slopes in purportedly accessible parking spaces and access aisles and along the routes to the entrances of the facilities.  (Compl. ¶¶ 18-21.)

She also indicates that, on her behalf, investigators examined these three locations and nineteen other retail Starbucks locations in Pennsylvania, Ohio, Maryland and New Jersey and found the following violations: 1) the surfaces of one or more access aisles and one or more purportedly accessible parking spaces had running and/or cross slopes exceeding 1:48 (i.e., 2.1%); 2) a portion of the route to the store entrance had a running slope exceeding 1:20 (i.e., 5.0%); 3) a grate in a purportedly accessible space had openings large enough to allow the passage of a ½ inch sphere; 4) the running slope of a curb ramp exceeded 1:12 (i.e., 8.3%); 5) no level landing was provided at the top of the curb ramp; 6) the route to the facility's entrance had a cross slope exceeding 1:48 (i.e., 2.1%); 7) no spaces were designated as "van accessible"; 8) signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area; 9) a curb ramp located on the route to the building entrance had a flare with a slope exceeding 1:10 (i.e., 10.0%); and 10) one or more purportedly accessible spaces were not marked with required signs.  (Compl. ¶ 22.)

Plaintiff indicates that she lives near Subject Property 1 and visits it approximately 6-10 times per year; that she frequently travels through the neighborhood where Subject Property 2 is

_____

[1] ECF No. 1.

located 4.24 miles from her residence and she visits it approximately three times per month; that Subject Property 3 is located approximately 2.97 miles from her residence in a shopping center adjacent to a grocery store where she regularly shops and she estimates that she visits it approximately 1-2 times per month; and that she intends to return to the Subject Properties regularly, but that numerous architectural barriers deter her from doing so.  (Compl. ¶¶ 26-30.)

Procedural History

Plaintiff filed this action on September 25, 2014.  On January 19, 2015, Defendant filed a motion to dismiss (ECF No. 13).  On February 17, 2015, Plaintiff filed a brief in opposition (ECF No. 22).  On February 24, 2015, Defendant filed a reply brief (ECF No. 24).

Federal question jurisdiction is based on the ADA claim, 28 U.S.C. § 1331; 42 U.S.C. § 12188(a).  She alleges that the cited violations constitute "a failure to remove architectural barriers" in violation of 42 U.S.C. § 12182(b)(2)(A)(iv) and a failure to alter, design or construct accessible facilities after the effective date of the ADA in violation of § 12183(a)(1) and the appropriate regulations, which will deter her and similarly situated individuals from returning to Defendant's facilities and that, without injunctive relief, she will be unable to fully access Defendant's facilities in violation of her rights under the ADA.  (Compl. ¶¶ 12, 40-48.)

She also brings this action on behalf of all others similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.  (Compl. ¶¶ 32-37.)  See seeks a declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA and its implementing regulations, a permanent injunction directing Defendant to take all steps necessary to remove the architectural barriers and bring its facilities into ADA compliance, an order certifying the class she proposes and naming her as class representative and appointing her counsel as class counsel, payment of costs of suit, payment of reasonable attorney's fees and any

other relief the Court deems just, equitable and appropriate.  (Compl. at 14-15.)

In its motion, Defendant argues that: 1) Starbuck's does not own, occupy or control the parking lots with the alleged violations, but is only one of many tenants at the locations, and the lease agreements clearly assign control of the common areas to the landlords; 2) Plaintiff has either sued the wrong party or failed to join necessary and indispensable parties, namely the landlords, and joining them would not be feasible; 3) Plaintiff lacks standing under the intent to return theory because she has alleged only that she is likely to return to the three Subject Properties and not the other 19 locations cited in the Complaint; 4) she lacks standing under a deterrent effect theory because she cannot allege that she has knowledge regarding barriers at Starbucks locations she has not visited; and 5) she cannot create standing by making class action allegations.

Plaintiff responds that: 1) she has demonstrated an intent to return to the Subject Properties based upon past discriminatory conduct, a reasonable inference that the conditions will continue and a reasonable inference that her stated intent to return to the Subject Property is plausible; 2) she satisfies the deterrent effect test based upon the barriers she has encountered at the Subject Properties that impede her safe access thereto; 3) the scope of her claims should be determined by application of Rule 23 and she does not have to visit every Starbuck's location to establish standing; 4) whether Defendant leases, occupies or controls the parking facilities is an issue of fact that cannot be determined at this stage of the proceedings; and 5) under the ADA, both landlord and tenant are liable (although they can allocate responsibility between themselves contractually), whether or not the landlords are "necessary" to this case is an issue of fact that cannot be determined at this stage of the proceedings and Defendant has not even argued that all the landlords are indispensable (it is possible the Court might not have personal jurisdiction over

every out-of-state landlord, but such parties can be dismissed or "vouched in").

In a reply brief, Defendant argues that: 1) the issue of control is properly determined in a Rule 12(b)(6) motion based on the leases that it has provided; 2) this case is different from the others Plaintiff has brought because Starbucks has argued that the landlords cannot be joined and because Starbucks has argued that it does not "operate" the place of public accommodation at issue (the parking lots); and 3) class action allegations cannot create standing which does not otherwise exist.

Standing

"A motion to dismiss for want to standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." <u>Ballentine v. United States</u>, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted). The Court of Appeals has explained that:

> In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: "Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." <u>Ballentine</u>, 486 F.3d at 810 (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); <u>see also</u> <u>Baldwin v. Univ. of Pittsburgh Med. Ctr.</u>, 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim."). The Supreme Court most recently explained this standard in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009): "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. 1955)….

> "A complaint has to 'show' such an entitlement with its facts." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 211 (3d Cir. 2009). With respect to 12(b)(1) motions in particular, "[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." <u>Stalley v. Catholic Health Initiatives</u>, 509 F.3d 517, 521 (8th Cir. 2007).

<u>In re Schering Plough Corp. Intron/Temodar Consumer Class Action</u>, 678 F.3d 235, 243-44 (3d

Cir. 2012).

The Supreme Court has held that:

> In every federal case, the party bringing the suit must establish standing to prosecute the action. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The standing requirement is born partly of "'an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.'" Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (quoting Vander Jagt v. O'Neill, 699 F.2d 1166, 1178–1179 (C.A.D.C. 1982) (Bork, J., concurring)).

Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004).  The Court has explained that:

> In Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), we held that, to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc., 528 U.S. 167, 180-81 (2000).

However, the manner in which standing must be supported depends upon the stage of the litigation at which the issue is raised: "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"

Defenders of Wildlife, 504 U.S. at 561 (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)).

ADA Title III

Title III of the ADA "prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations."  Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 128 (2005).  Specifically, it requires "places of public accommodation" to "remove architectural

barriers … in existing facilities … where such removal is readily achievable," 42 U.S.C.

§ 12182(b)(2)(A)(iv), and to "design and construct facilities for first occupancy [no] later than 30

months after July 26, 1990 that are readily accessible to and usable by individuals with

disabilities," § 12183(a).  Places of public accommodation include "a restaurant, bar, or other

establishment serving food or drink," § 12181(7)(B), and thus include Starbucks.[2]  Failure to

meet these requirements constitutes a violation of the ADA which may be enforced by

individuals bringing suit for injunctive relief in federal court, § 12188(a).

"Under Title III of the ADA, private plaintiffs may not obtain monetary damages and

therefore only prospective injunctive relief is available."  Anderson v. Macy's, Inc., 943 F. Supp.

2d 531, 538 (W.D. Pa. 2013) (citation omitted).  See 42 U.S.C. § 12188(a) (providing that the

remedies available to individuals shall be those set forth in 42 U.S.C. § 2000a-3(a), which allows

a private right of action only for injunctive relief for violations of Title II of the Civil Rights Act

of 1964); Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968) (noting that Title II

allows for injunctive relief only).

Because the remedy for a private ADA Title III violation is injunctive relief, courts look

beyond the alleged past violation and consider the possibility of future violations.  Plaintiffs

seeking prospective injunctive relief must demonstrate a "real and immediate threat" of injury in

order to satisfy the "injury in fact" requirement of standing.  Anderson, 943 F. Supp. 2d at 538

(citations omitted).  "Past exposure to illegal conduct does not in itself show a present case or

controversy regarding injunctive relief, however, if unaccompanied by any continuing, present

adverse effects."  O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

---

[2] Plaintiff cites § 12181(7)(F), but this would appear to be a typographical error because the subsection covers various kinds of service establishments (laundromats, dry cleaners, banks, etc.).

Judge Hornak has noted that:

> In Title III ADA [c]ases in which disabled plaintiffs bring suit seeking an injunction to cure discriminatory practices, courts generally look to four factors to determine the likelihood of the plaintiff returning to the place of the alleged ADA violation, and therefore whether the threat of injury is concrete and particularized: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiffs past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." "The four-factor test is one of totality, and a finding in favor of [the plaintiff] does not require alignment of all four factors."

Anderson, 943 F. Supp. 2d at 539 (quoting Harty v. Burlington Coat Factory of Pa., L.L.C., 2011 WL 2415169, at *4, 7 (E.D. Pa. June 16, 2011)).  Defendant argues that "district courts of the Third Circuit have established four factors to be considered in determining whether allegations of future injury satisfy the 'injury in fact' requirement of standing" (ECF No. 14 at 19), thereby suggesting that this test is "the law" in the Third Circuit and that Plaintiff fails to meet it. Although this four-factor test has been cited by some district courts, it has not been adopted by the Third Circuit.[3]  See Garner v. VIST Bank, 2013 WL 6731903, at *5 (E.D. Pa. Dec. 20, 2013) (citing cases).  But see Klaus v. Jonestown Bank & Trust Co. of Jonestown, 2013 WL 4079946, at *7 (M.D. Pa. Aug. 13, 2013) (describing four-part test as "rigid" and "unendorsed" by the Third Circuit, but finding that blind plaintiff who challenged ATMs met it anyway).

The Court observes that that no court of appeals has adopted the four-factor test.  The Court of Appeals for the Eleventh Circuit noted that a district court had applied the four-factor test, but stated that these factors are "not exclusive and that no single factor is dispositive. District courts must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury."  Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1327, 1337 n.6 (11th Cir. 2013); see also Daniels v. Arcade, L.P., 477 F. App'x 125,

---

[3] This Court's research has not found any case from the Third Circuit discussing the issue of standing in an ADA Title III action.

129 (4th Cir. 2012) (declining to adopt the four-factor test, which the court described as having "overly and unnecessarily complicate[d] the issue at hand."); D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1037-38 (9th Cir. 2008) (finding intent to return based on regularity of visits and stated intent but not proximity). Some courts have noted that the four-factor test is more appropriate to apply at the summary judgment stage, not on a motion to dismiss. See Brown v. Showboat Atlantic Propco, LLC, 2009 WL 690625, at*2 (D.N.J. Mar. 11, 2009); Wilson v. PFS LLC, 2006 WL 3841517, at *4 (S.D. Cal. Nov. 2, 2006).

Courts that have not adopted the four-factor test have cited the following three considerations regarding an intent to return for purposes of standing: 1) the plaintiff alleges past injury under the ADA (encountering some kind of barrier); 2) it is reasonable to infer from the complaint that the discriminatory treatment will continue; and 3) it is reasonable to infer from the complaint that, based on the plaintiff's past frequency of visits and the proximity of the defendant's place of business to the plaintiff's home, the plaintiff intends to return to this location in the future. Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008) (legally blind patron who frequently visited restaurants near her home and did not receive "effective communication" of their menu options had standing to pursue claim). See also Chapman v. Pier 1 Imports, 631 F.3d 939, 948 (9th Cir. 2011); Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 62-63 (1st Cir. 2005) ("Ferries").

The location at issue need not be near the plaintiff's home if she alleges a reason to return to the location. See Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137-38 (9th Cir. 2002) (plaintiff who traveled weekly to city 70 miles from where he lived to visit his grandmother and encountered architectural barriers at grocery store had standing to sue); D'Lil, 538 F.3d at 1037 (disabled plaintiff who expressed intent to return to Santa Barbara area—as she

frequently did for both business and pleasure—and stay at Best Western Encina if barriers were removed established standing); Houston, 733 F.3d at 1340 (plaintiff who lived in next county but traveled frequently 30.5 miles to supermarket near his lawyer's office and encountered architectural barriers had standing); Kreisler v. Second Ave. Dining Corp., 731 F.3d 184, 188 (2d Cir. 2013) (standing requirements met when "it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [place of public accommodation] to plaintiff's home, that plaintiff intended to return to the subject location."); Camarillo, 518 F.3d at 158 (legally blind patron who alleged that she repeatedly was rebuffed when she asked to have menus read to her had standing to sue based on past experience, reasonable inference that it would continue and reasonable inference that she would return); Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co., 765 F.3d 1205, 1211-12 (10th Cir. 2014) ("CCDC") (plaintiff who submitted affidavit stating that she intended to return to store with barriers at least six times per year had standing to sue).

The Deterrent Effect Test

More recently, a number of courts have rejected the "intent to return" test for standing in ADA Title III cases in favor of a "deterrent effect test." Under this theory, a disabled individual suffers a cognizable injury if he is deterred from visiting a non-compliant public accommodation because he has encountered barriers to his disability there. Chapman, 631 F.3d at 950.

The deterrent effect test relies on the statement in the ADA that: "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subsection does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). See Kreisler, 731 F.3d at 188 (disabled plaintiff in wheelchair saw inaccessible entrance to diner and did not have to attempt to overcome it prior to

bringing suit); <u>Doran v. 7-Eleven, Inc.</u>, 524 F.3d 1034, 1037-38 (9th Cir. 2008) (plaintiff showed "intent to return" to store 550 miles from home once barriers were removed, thus really a deterrent effect case); <u>Ferries</u>, 405 F.3d at 64-65 & n.7 (wheelchair user did not have to engage in the futile and indeed hazardous gesture of attempting to board ferry that had no accessible ramps or bathrooms to establish a cognizable injury); <u>Frame v. City of Arlington</u>, 657 F.3d 215, 235-36 & n.104 (5th Cir. 2011) (en banc) (in a Title II case, wheelchair users did not have to limit their claims to noncompliant sidewalks they had actually tried to use).

It is true that, even under the deterrent effect test, the plaintiff must still assert an intent to return to the particular place or places where the violations are alleged to be occurring and thus a plaintiff does not have standing at all of a defendant's facilities scattered over a vast area that she would not realistically visit. See <u>Scherr v. Marriott Int'l, Inc.</u>, 703 F.3d 1069, 1074-75 (7th Cir. 2013) (plaintiff who lived in Illinois but who was injured by spring-closing bathroom door of hotel in Overland Park, Kansas, and who expressed an intent to return for a relative's wedding had standing with respect to that hotel, but not the 56 other Courtyard Marriott hotels that used the same spring-hinged door closers). Similarly, in the <u>Anderson</u> case, no class action was asserted therein and thus the plaintiff had to show actual injury at each named store.

However, when a plaintiff has presented a class action complaint, the issue of standing is limited to the plaintiff's individual standing, not whether the plaintiff can challenge policies as they relate to a multitude of locations. Rather, that is an issue of class certification. As the Tenth Circuit recently observed:

> Abercrombie insists that our standing analysis does not end at the Park Meadows Mall. It argues that Ms. Farrar lacks standing to bring a claim for nationwide injunctive relief because she does not intend to visit every Hollister store with a porch—over 230 stores nationwide. We have no doubt that if Ms. Farrar were seeking a nationwide injunction in her own right, then she would lack standing to challenge accessibility barriers at stores she never intends to visit. Although the

concepts of standing and adequacy of status to maintain a class action appear related, they are independent criteria and must be evaluated separately. See Hassine v. Jeffes, 846 F.2d 169, 175-76 (3d Cir. 1988). The question whether an injunction may properly extend to Hollister stores nationwide is answered by asking whether Ms. Farrar may serve as a representative of a class that seeks such relief. All that is necessary to answer this question is an application of Rule 23.

CCDC, 765 F.3d at 1212-13 (footnote and some citations omitted). See also Garner, 2013 WL 6731903, at *9 (plaintiff satisfied standing requirements with respect to the ATM he used and the challenges to the remaining ATMs represented an issue of class certification, not standing).

The Court concludes that Plaintiff has satisfied the requirements of standing, both under the intent to return test and under the deterrent effect test. She has encountered architectural barriers at the Subject Locations, which are close to her home and/or which she has visited frequently, and she has expressed an intent to return even though the barriers remain.

With respect to other locations cited in the Complaint, Plaintiff does not have to visit them to establish standing. Rather, that is an issue of class certification, which is not before the Court at this time. See Kerrigan v. The Phila. Bd. of Election, 248 F.R.D. 470 (E.D. Pa. 2008) (certifying barrier removal class under Rule 23(b)(2) involving 400 separate polling locations throughout the City of Philadelphia); Moeller v. Taco Bell Corp., 220 F.R.D. 604, 613-14 (N.D. Cal. 2004) (certifying statewide class of wheelchair users challenging barriers at approximately 220 restaurants); Colorado Cross-Disability v. Taco Bell, 184 F.R.D. 354, 363 (D. Colo. 1999) (certifying class of wheelchair users challenging access barriers at approximately 42 restaurants); Park v. Ralph's Grocery Co., 254 F.R.D. 112, 120-23 (C.D. Cal. 2008) (certifying barrier removal class under Rule 23(b)(2) involving more than 100 grocery store locations throughout the state of California). Therefore, the motion to dismiss for lack of standing will be denied.

Appropriate Parties

Defendant argues that is the wrong party because, with respect to all of the locations cited

12

in the Complaint, it is only one of a number of tenants at a shopping plaza and that the landlords are the proper party in each instance because, according to the leases, the parking lots are the responsibility of the property owners, not the tenants. (ECF No. 20 Ex. B.) Defendant has proffered redacted copies of all 22 leases (ECF No. 20 Exs. C-X), each of which, it asserts, contains express provisions allocating to the landlords the responsibility for the parking lots and other common areas and/or for compliance with laws, including the ADA.

Plaintiff responds that, regardless of what leases between Defendant and the property owners might say, both the landlord and tenant are liable under the ADA. In addition, she argues that the leases should not be considered at this stage of the proceedings, but that, even if they are, they may allocate ADA compliance but do not reveal the level of control Starbucks has over the parking lots.

The Court of Appeals has held that: "Although a district court may not consider matters extraneous to the pleadings, 'a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). "A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Miller v. Clinton County, 544 F.3d 542, 550 (3d Cir. 2008) (quotation omitted).

Defendant argues that the leases are "central to" Plaintiff's claims, but that is not the issue. The question is whether Plaintiff's claims are "based on" the leases and they are not. They are based on the ADA. The leases might provide a potential defense to Defendant but, as discussed below, not a basis for dismissal. Nevertheless, even if the Court takes the leases into

consideration, the result is the same, for the reasons discussed below.

The ADA imposes liability on "any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  The regulations to the ADA provide as follows:

> Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.

28 C.F.R. § 36.201(b).  "Thus, contractual allocation of responsibility has no effect on the rights of third parties."  Botosan v. Paul McNally Realty, 216 F.3d 827, 833 (9th Cir. 2000).  Quoting from the DOJ's formal interpretation of the regulation in its Technical Assistance Manual— which is owed substantial deference under the law—the court noted that "any allocation made in a lease or other contract is only effective as between the parties, and both landlord and tenant remain fully liable for compliance with all provisions of the ADA relating to that place of public accommodation."  Id.  In Botosan, the court held that a landlord could not avoid liability for parking lot barriers based upon a lease provision that shifted all responsibility for ADA compliance to a tenant.  Courts have also held that tenants may not argue that they are improper parties because the ADA clearly imposes liability on them.  See Shaw v. Ghimire, 2013 WL 5372400, at *4 (N.D. Cal. Sept. 25, 2013) ("the tenant and operator of a place of a public accommodation[] is liable under the ADA regardless of any provision in her lease stating otherwise"); Davis v. Jacob S. Ciborowski Family Trust, 2012 WL 3779612, at *3 (D.N.H. Aug. 30, 2012) (tenant could be liable under the ADA despite the fact that "under the terms of its lease … it [was] not permitted to make structural changes to the property.")

Defendant argues that, when a plaintiff sues a tenant for ADA violations regarding a

common area over which the tenant never had any control pursuant to a lease, the landlord must bear responsibility, citing Kohler v. Bed Bath & Beyond of Cal., LLC, 2012 WL 3018320, at *3 (C.D. Cal. July 23, 2012). The Kohler court appears to have concluded that, because certain allegations of the complaint cited architectural barriers in the parking lot (a common area available for the joint use and benefit of Bed, Bath and Beyond, other shopping center tenants and customers), BB&B therefore did not "lease" the parking lot from the landlord. The court cited no authority for this conclusion. In addition, it stated that it was "distinguishing" the Botosan case on the ground that Botosan involved the attempt of a landlord to contract away its responsibility, but Kohler involved a tenant who never owned or had any control over the parking lot in the first instance. The court's interpretation of Botosan is directly contradicted by the language of that opinion, which states that the ADA imposes liability on both landlords and tenants.

Finally, the Kohler court appears to have implicitly narrowed the definition of "place of public accommodation" to address the specific architectural barrier at issue—the parking lot is addressed separately from the bathroom stalls that were also at issue in the case. There is no authority for this hair splitting. The regulations provide that:

> Place of public accommodation means a facility operated by a private entity whose operations affect commerce and fall within at least one of the following categories--
> …
>
> (2) A restaurant, bar, or other establishment serving food or drink…

28 C.F.R. § 36.104.

Thus, a "parking lot at Starbucks" is not a place of public accommodation under the ADA; Starbucks itself is (including all of its parts). In summary, this Court finds the Kohler case unpersuasive and unhelpful. Starbucks is a proper party to this suit and Defendant's motion to

dismiss based on this argument is rejected.

Necessary and Indispensable Parties

Defendant moves to dismiss this action under Rule 12(b)(7) and Rule 19 for failure to join necessary and indispensable parties. Specifically, Defendant argues that the property owners are "necessary" and "indispensable" parties because they control the parking lots, and thus the case may not proceed without their presence which—they contend—cannot be obtained because the Court cannot exercise personal jurisdiction over all the landlords, some of whom are not Pennsylvania residents. Plaintiff responds that "the extent of control that a party has over property such that it is obligated to make ADA repairs is an issue of fact." Delgado v. Orchard Supply Hardware Corp., 826 F. Supp. 2d 1208, 1216 (E.D. Cal. 2011). In Delgado, the court denied a motion for summary judgment because the evidence was disputed as to how much control a hardware store had to make changes to a parking lot. See also Hubbard v. Rite Aid Corp., 433 F. Supp. 2d 1150, 1158-59 (S.D. Cal. 2006) (refusing to dismiss case on ground that common area operator was a necessary party).

In its reply brief, Defendant argues that the issue is whether it "operates" a place of public accommodation under the ADA, which it contends it does not because it does not own or control the common area parking lots at issue. It cites several cases that discuss whether individuals may be held liable as "operators" of a public accommodation under Title III of the ADA. Coddington v. Adelphi Univ., 45 F. Supp. 2d 211, 215 (E.D.N.Y. 1999); Gluckenberger v. Boston Univ., 957 F. Supp. 306 (D. Mass. 1997); Aikins v. St. Helena Hosp., 843 F. Supp. 1329 (N.D. Cal. 1994). These cases are inapposite as there are no individuals involved in this case. In addition, Defendant's argument fails for two reasons: 1) as noted above, the places of public accommodation in this case are Starbucks facilities, not "parking lots at Starbucks"; and

2) Defendant has omitted the third option, a party that <u>leases</u> the property, which Starbucks

unquestionably does (whether it has the right to make changes to the parking lots or not).

Defendant cites <u>Neff v. American Dairy Queen Corp.</u>, 58 F.3d 1063, 1067 (5th Cir.

1995), in which the court held that a franchisor who only retained sufficient control over a Dairy

Queen store to veto proposed modifications to the store's facilities did not "operate" the store.

There was no dispute that ADQ did not "own" or "lease" the store, however.  <u>Id.</u> at 1066 n.8.

Federal Rule of Civil Procedure 19 provides that:

> A person who is subject to service of process and whose joinder will not deprive
> the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among
> existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so
> situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the
> interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double,
> multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Rule 19(b) indicates that:

> If a person who is required to be joined if feasible cannot be joined, the court
> must determine whether, in equity and good conscience, the action should
> proceed among the existing parties or should be dismissed. The factors for the
> court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might
> prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were
> dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  The Court of Appeals has held that: 1) the clauses in Rule 19(a) should be

treated in the disjunctive, that is, if either condition is met, the absent party is "necessary"; 2) the

first clause is concerned only with whether complete relief can be accorded among those already

parties, not what effect the decision may have on absent parties; 3) courts must first determine whether an absent party is "necessary" prior to determining whether the case must be dismissed because the party is "indispensable"; and 4) a defendant's right to contribution or indemnity from an absent party does not render that absent party indispensable.  <u>General Refractories Co. v. First State Ins. Co.</u>, 500 F.3d 306, 312-19 (3d Cir. 2007).  In addition, the court noted that absent parties can be "vouched in" under a common law procedure in which the absent parties are notified of the action and if they choose not to defend, they may be precluded from relitigating issues decided in the action.  <u>Id.</u> at 320 n.15.

The party moving for dismissal for failure to join an absent party "bears the burden of showing why an absent party should be joined under Rule 19."  <u>Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth.</u>, 635 F.3d 87, 97 (3d Cir. 2011).  In that case, the defendant (SEPTA) argued that, because it could not install an elevator at City Hall Courtyard to make it accessible under the ADA without the agreement of the City, the City was a necessary party to the action.  The court held that, because the City had been involved in the case,[4] and because it knew what the plaintiff wanted but did not intervene or offer any objections, the City's ability to protect its interest would not be impaired if it was not joined.  Nor would the relief be "hollow" because the City would simply have to work with SEPTA in complying with the court order, as it had already agreed to do.  <u>Id.</u> at 97-98.

As an initial matter, Defendant's argument that it cannot offer "complete relief" to Plaintiff because the landlords did not transfer to Starbucks the right or obligation to make the sort of renovations to the common area of the properties which are sought in the Complaint is

---

[4] The City had been a party to the action, but it settled with the plaintiff and agreed to permit SEPTA to use its property to install the elevator, although SEPTA was not a party to this settlement.  <u>Id.</u> at 91 & n.6.

misplaced.  As noted above, it is the ADA, and not the common law of property or the leases, which imposes liability on tenants for ADA compliance, although it permits tenants and landlords to allocate liability among themselves.  Similarly, the landlords do not become necessary parties merely because the leases state that Starbucks cannot make changes to the common areas without the landlords' prior written permission.  However, the ADA and its regulations make landlords necessary parties to these kinds of actions.  <u>Botosan</u>, 216 F.3d at 834.

In <u>Independent Living Resources v. Oregon Arena Corp.</u>, 982 F. Supp. 698 (D. Or. 1997), <u>opinion supplemented</u>, 1 F. Supp. 2d 1159 (D. Or. 1998), the court concluded its discussion of this issue with the following comments:

> As a practical matter, if a customer brings a Title III action against the landlord for policies that are subject to the tenant's control, then the tenant likely is a necessary party who, on appropriate motion, must also be joined. Otherwise, the court might be unable to grant effective relief. That is particularly true in Title III cases, where the remedy in a private action is limited to prospective injunctive relief. Likewise, the landlord may be a necessary party in any action brought against the tenant for conditions that are the landlord's responsibility.

> If the tenant and landlord stipulate as to the allocation of responsibility, the court may then dismiss the claims against the non-responsible party. The tenant and landlord may also implead each other and seek indemnification pursuant to the contractual allocation of responsibility. Consequently, the court does not believe that in most cases this will present a significant issue.

> For purposes of the instant case, OAC—as the landlord—is a proper defendant. If OAC contends that some other party is contractually responsible for the challenged conditions, OAC may either proceed with this case in its present form, or it may implead or move to join those other parties.

<u>Id.</u> at 768.  Thus, the court observed that the remedy for a missing landlord or tenant is for the defendant in the case to implead or join the missing party, not move for dismissal.  <u>See also</u> <u>Hubbard</u>, 433 F. Supp. 2d at 1158-59 & n.3 (even if common area operator was a necessary party, there was no showing that it could not be joined and thus there was no basis for dismissal under Rule 19(b)).

Defendant further argues that all of the landlords cannot be joined because some of them reside outside Pennsylvania and are not subject to this Court's personal jurisdiction. It is true that, although joinder is most often deemed "infeasible" because it would destroy a court's subject matter diversity jurisdiction, it can also be infeasible because the party is not "subject to service of process," that is, not subject to the Court's personal jurisdiction. However, Defendant has not elaborated on this argument. See Wilson v. The Canada Life Assurance Co., 2009 WL 532830, at *4-6 (M.D. Pa. Mar. 3, 2009) (general auto repair business located in British Columbia, Canada did not purposefully direct any conduct into Pennsylvania for specific personal jurisdiction purposes and had far too few contacts for general personal jurisdiction purposes).

In this case, Defendant merely indicates that there are 22 landlords, some of whom reside outside Pennsylvania. It makes no argument about their contacts with Pennsylvania and thus the Court cannot resolve any personal jurisdiction argument. In addition, as noted above, the Court of Appeals observed in General Refractories that there are methods available, such as "vouching in," that can be used to protect the interests of even parties who cannot be joined in a case. And, as Plaintiff acknowledges, she could always dismiss landlords over whom personal jurisdiction could not be asserted (assuming that Defendant impleaded them into the case) and proceed against those parties over whom the Court could exercise personal jurisdiction.

In summary, relevant case law suggests that there are numerous alternatives available to Starbucks: 1) it can notify the landlords about this action and request their assistance in ADA compliance; 2) it can join or implead the landlords as additional defendants; 3) it can make the changes necessary to bring the facilities into ADA compliance and then seek reimbursement for the cost of such alterations from the landlords, pursuant to the leases; and 4) it can "vouch in"

landlords over whom the Court would not have personal jurisdiction such that they would be required to defend themselves or risk being precluded from relitigating the issue in the future. Defendant has failed to demonstrate that the absentee landlords, even if necessary parties, are indispensable parties for purposes of this ADA action such that it cannot continue in their absence. Therefore, the motion to dismiss for failure to join necessary and indispensable parties will be denied.

For all the reasons cited above, Defendant's motion to dismiss this action will be denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SARAH HEINZL, individually and on behalf of    )
all others similarly situated,                 )
                Plaintiff,    )
                            )
     vs                                      )    Civil Action No. 14-1316
                            )    Magistrate Judge Mitchell
STARBUCKS CORPORATION,                          )
                Defendant.    )

ORDER

       AND NOW, this 9th day of March, 2015,

       IT IS HEREBY ORDERED that the motion to dismiss filed by the Defendant

(ECF No. 13) is denied.

       IT IS FURTHER ORDERED that Defendant file an Answer to the Complaint by

March 23, 2015.


                                    s/Robert C. Mitchell
                                    ROBERT C. MITCHELL
                                    United States Magistrate Judge